IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILBERT PETERSON,                    )      No. C 05-4458 JSW (PR)
                                     )
            Petitioner,              )
                                     )      **ORDER DENYING PETITION FOR A**
      vs.                            )      **WRIT OF HABEAS CORPUS**
                                     )
A.P. KANE, Warden,                   )
                                     )
            Respondent.              )
                                     )
_____     )

## INTRODUCTION

Petitioner, a prisoner of the State of California, has filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the Board of Prison Terms ("BPT") denial of parole during parole suitability proceedings in 2004. This Court ordered Respondent to show cause why a writ should not issue. Respondent filed an answer, memorandum and exhibits in support thereof. Petitioner has filed a traverse. For the reasons stated below, the petition is denied on the merits.

## BACKGROUND

In 1974, in Contra Costa County Superior Court, Petitioner was convicted of first degree murder with a deadly weapon, first degree robbery causing great bodily injury, selling a controlled substance, receipt of stolen property and possession of a firearm by an ex-felon. The trial court sentenced him to a term of 7 years-to-life plus one to four years in state prison. Petitioner was also convicted of possession of an illegal weapon in 1979 while incarcerated. Petitioner's minimum parole eligibility date on the life crime was

February 22, 1981.  In this habeas action, Petitioner does not challenge his conviction or sentence, but instead alleges that his due process rights were violated by the denial of parole by the BPT during a parole suitability hearing in April 2004.

The BPT relied, in part, upon the following account of Petitioner's commitment offenses from his prior hearings:

> On February 8, 1973, sometime between 3:00 p.m. and 5:25 p.m., the prisoner and Crime Partner Breckenridge entered the car lot in Richmond, California, engaged the victim Ruben Wonnenberg, a salesman in the car lot. . .in conversation. The three parties entered the office located on the car lot.  Then, while one of the defendants engaged the Victim Wonnenberg in conversation, the other approached from the rear and shot Victim Wonnenberg in the neck.  Victim Wonnenberg immediately fell to the floor of the office, but his eyes remained open.  One of the defendants repeatedly stabbed the victim in the chest with scissors.  The prisoner and crime partner then removed money and other items of value from the victim.

> Group one, sale of controlled substance, receiving stolen property with no prior felony convictions.  Group two, possession of a firearm by an ex-felon with two prior felony convictions, consecutive with group one, and consecutive with prior prison term case number 161810, Contra Costa County.  The Richmond Police Department was contacted by a deputy from Contra Costa Sheriff's Office, who indicated that an individual they had in custody for the sale of heroin would be willing to cooperate with local law enforcement agencies by naming him and helping to apprehend his supplier, the prisoner.  November 29, 1973, a representative from the Richmond Police Department met with the prisoner who also informed the investigating officers that his wife, Darlene, was involved in the sale and distribution of heroin.  The informant contacted the prisoner at his place of residence by telephone and arranged for a sale of a quantity of heroin.  The informant was supplied with 50 dollars.  The informant and an undercover police officer then went to the prisoner's place of residence, observed informant enter and exit four minutes later.  The informant came directly to the [under]cover officer and gave them a balloon containing a substance which was believed to be heroin.  Officers were left to observe the place of residence and maintain surveillance.  Other officers proceeded to secure a search warrant.  While doing so, the prisoner and his wife left the place of residence and were followed and covered by law enforcement officials.  A warrant was secured and search of the prisoners' place of residence was initiated in their absence.  Following the securing of the search warrant, the prisoner and his wife were taken into custody.  During the search of the prisoner, 50 dollars in cash in the marked money used by the informant for the purchase of heroin was found on his person.  During the search of the prisoner's residence, officers found a substance believed to be marijuana, one 25 caliber automatic handgun, and one Ruger 22 semi-automatic handgun, various credit cards and identifications bearing a name other than those of the prisoner and his wife were found at the place of residence.  Subsequent investigation determined the weapons were found to have been

stolen.

> Possession of an illegal weapon.  On July 21, 1979, at approximately 10:00 a.m., the prisoner, an inmate at Folsom State Prison was in dining room number one and attempted to search the prisoner, but he ran into the main kitchen area.  The officer pursued and blew his whistle for assistance.  Another correctional officer stopped the prisoner and found the prisoner to have in his possession a prison made knife 11 inches overall length with a six and 1/4 inch blade sharpened to the point.

(Respondent's Exhibit 4 (hereinafter ""Ex. 4 ") at 16.)

Petitioner opted not to discuss the circumstances of the crime at the hearing. However, an earlier discussion of the prisoner's version from his counselor's report which was discussed at the hearing stated:

> Peterson agreed with the commitment offense as it is documented.  During the interview, Peterson indicated that he neither shot nor stabbed the victim.  He did not go to the car lot with the intent to harm the victim.  When the argument between the victim and Breckenridge escalated, Peterson neither attempted to prevent the shooting or stabbing, nor did he report the crime to the police department.  Therefore, he stated he must accept responsibility for his actions.  Peterson states, quote 'I feel that my commitment offense was a terrible and senseless crime that should not have happened.  My actions leading to and following my commitment offense was that of a delinquent with no regard for the suffering of others.  However, today I feel the pain and suffering I have caused. . . I am sorry and I regret that it had to take a crime such as this, and, yes, that it took prison to make me a better person.  Also, I will continue to grow and mature into responsible person."

Ex. 4 at 17-18.

At the hearing, Petitioner also testified about his extensive criminal history, which included juvenile convictions resulting in a stay at the California Youth Authority, as well as county jail time for auto theft in 1967, burglary, forgery and credit card theft in 1968, as well as a prior prison term for a 1969 manslaughter conviction, involving the shooting death of a 17 year old in the head with a 38 caliber revolver, which Petitioner contends was an accidental killing of a friend.  (*Id.* at 18-19.)   Petitioner was subsequently convicted of possession/sale of a controlled substance in 1974.  (*Id.* at 19-20.)  Petitioner discussed his extensive history of drug use  (*Id.* at 23-24.)  The BPT discussed and considered Petitioner's parole plans (*Id.* at 24-25), including those

3

documented in his counselor's report. (*Id.* at 25-26.) The BPT also considered letters in Petitioner's file from his mother, daughter, sister-in-law and brother, offering significant family support, accommodation and employment upon his release. (*Id.* at 26-29). Since 1991, Petitioner's classification score has been zero and his placement score is 19, the lowest it can be based on his conviction. (*Id.* at 32). The Board considered Petitioner's significant work history as a barber (*Id.* at 33-34), positive work reports and other positive programming while incarcerated. (*Id.* at 34.)

The Board also considered Petitioner's significant history of disciplinary violations while incarcerated, including 15 serious disciplinary "115s", most recently in April of 1998 for drug trafficking. (*Id.* at 36.) The BPT reviewed the psychiatric report prepared in 2001 which noted that he posed a moderate degree of threat to the public if released and that he could benefit by continuing to remain disciplinary free and through additional self-help programs, including anger management. (*Id.* at 37.) The most recent Psychiatrist's report, from 2001, reflects that Petitioner has a very long history of involvement in the drug culture, including use, abuse and dealing (*Id.* at 37.) Petitioner expressed that he discontinued AA and NA when they were phased out in his prison, but that he hasn't "had a need to" continue now that those programs are available again because "due to my illness I have no chance of messing with no more drugs." (*Id.* at 38.)

After a recess to consider the evidence before it, the BPT found that Petitioner was not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety. (*Id.* at 60.) The presiding Commissioner explained that, in deciding to deny parole, the panel considered all of the information received from the public in denying parole. The Board found that Petitioner's commitment offense was carried out in a cruel manner, in that the employee of the car dealership was shot and then stabbed repeatedly with a pair of scissors. The BPT also found that the motive for the crime was very trivial, apparently robbery of a "little amount of money." (*Id.* at 61.)

4

Further, the Board found that Petitioner's lengthy history of prior criminality, including a prior manslaughter conviction, as well as his failed attempts to correct that criminality, were a factor in denying parole. (*Id.* at 60.) They also noted his unstable social history and extensive history of drug abuse and dealing. Further, the BPT found that he had not "sufficiently participated in beneficial self-help programs." (*Id.*) The Board noted that Petitioner "continued to display negative behavior 24 years into his incarceration, receiving a 115 in April of 1998, the latest, for narcotics trafficking. . .the last of 15 115s."

The BPT also relied on the psychiatric evaluation of Petitioner which was "not terribly supportive of release, and it really is inconclusive in that there is no assessment of dangerousness in the report."(*Id.* at 62.) However, the report also documented the doctor's perception that contrary to Petitioner's assertion, he needs ongoing participation and substance abuse prevention. (*Id.*) The Board commended Petitioner on his continued efforts and further noted the doctor's perception that Petitioner is making strenuous attempts to change his character and lifestyle. However, the Board found that Petitioner needs continued participation in self-help to "develop the skills that will allow him to remain clean and sober, and to remain disciplinary free. Until further progress is made, he continues to be unpredictable and a threat to others." (*Id.* at 66.) The panel further noted that Petitioner needed to participate in substance abuse prevention because "it's obvious it has been the root of evil for you for many, many years and you're going to have to continue to show that you are clean and sober and can remain that way." (*Id.* )

Petitioner challenged the BPT's decision in the Contra Costa County Superior Court, which issued a reasoned opinion denying Petitioner's claims. The Court found that there is "no trouble finding that "some evidence" supports the Board's decision. (Petitioner's Appendix (hereinafter "App.") 2 at 3). The court found that the record supported the finding of the BPT based on the fact that the commitment offense was

carried out in an especially cruel manner, that Petitioner had a significant prior record, and that Petitioner's institutional behavior rendered him unsuitable for parole.  (App. 2 at 3-4.)  The California Court of Appeal and the California Supreme Court summarily denied Petitioner's habeas petitions, and thereafter Petitioner filed the instant federal petition for a writ of habeas corpus.

**DISCUSSION**

A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."  *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004).  Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.*  at § 2254(d).  Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the

1  state court made an unreasonable application of Supreme Court precedent, the only

2  definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the

3  holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court

4  decision.  *Id.* at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

5  B.    Legal Claims and Analysis

6         Petitioner claims that the BPT's denial of parole in 2004 violated his right to due

7  process because the decision was not supported by some evidence, and because the

8  decision was made pursuant to the BPT's "anti-parole" policy.

9         1.    The BPT Decision

10        California's parole scheme provides that the BPT "shall set a release date unless it

11 determines that the gravity of the current convicted offense or offenses, or the timing and

12 gravity of current or past convicted offense or offenses, is such that consideration of the

13 public safety requires a more lengthy period of incarceration for this individual, and that

14 a parole date, therefore, cannot be fixed at this meeting."  Cal. Penal Code § 3041(b).  In

15 making this determination, the BPT considers various factors, including the prisoner's

16 social history, the commitment offense and prior criminal history, and his behavior

17 before, during and after the crime.  *See* Cal. Code Regs. tit. 15, § 2402(b) – (d).

18        The record shows, and there is no dispute, that the BPT panel afforded Petitioner

19 and his counsel an opportunity to speak and present their case at the hearing, gave them

20 time to review Petitioner's central file, allowed them to present relevant documents and

21 provided a reasoned decision denying parole. The panel concluded that Petitioner is not

22 suitable for parole and would pose an unreasonable risk of danger to society or a threat to

23 public safety if released from prison.  The panel explained that it found the commitment

24 offense was committed in a cruel manner and found the motive for the crime to be very

25 trivial in comparison with the gravity of the offense. The panel further found that

26 Petitioner had an unstable social history, a significant history of criminality and of using

27

28

7

and selling drugs.

The panel further found that Petitioner had not sufficiently participated in self-help programming which Petitioner needed, despite his representation that he did not. The Contra Costa County District Attorney also opposed parole.  The Board did commend Petitioner's continued participation in working on improving himself and toward parole.

   2. <u>The State Court Decisions</u>

The state superior court found that the panel's denial of parole was supported by "some evidence" in the record.  (Pet. App. 2.)  Specifically, the court cited the Board's findings with respect to the circumstances of the murder, Petitioner's history of unstable relationships, his prior record of violence, and his insufficient participation in self-help programs, which it found to be supported by some evidence in the record.  (*Id.*)  The California Court of Appeal and the California Supreme Court summarily denied Petitioner's habeas petitions.

   3. <u>The Federal Right to Due Process</u>

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).  The determination does not depend on whether a parole release date has ever been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  *Biggs v. Terhune*, 334 F.3d 910, 914-15 (9th Cir. 2003).

Due process requires that "some evidence" support the parole board's decision finding him unsuitable for parole.  *Sass*, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); *Biggs*, 334

1   F.3d at 915 (same); *McQuillion*, 306 F.2d at 904 (same).  The "some evidence" standard

2   is minimally stringent and ensures that "the record is not so devoid of evidence that the

3   findings of [the BPT] were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457.

4   Determining whether this requirement is satisfied "does not require examination of the

5   entire record, independent assessment of the credibility of witnesses, or weighing of the

6   evidence."  *Id.* at 455-56 (quoted in *Sass*, 461 F.3d at 1128).  Due process also requires

7   that the evidence underlying the parole board's decision have some indicia of reliability.

8   *Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.  In sum, if the parole board's

9   determination of parole unsuitability is to satisfy due process, there must be some

10  evidence, with some indicia of reliability, to support the decision.  *Rosas v. Nielsen*, 428

11  F.3d 1229, 1232 (9th Cir. 2005).

12          When assessing whether a state parole board's suitability determination was

13  supported by "some evidence," the court's analysis is framed by the statutes and

14  regulations governing parole suitability determinations in the relevant state.  *Irons v.*

15  *Carey*, 505 F.3d 846, 850 (9th Cir. 2007).  Accordingly, in California, the court must

16  look to California law to determine the findings that are necessary to deem a prisoner

17  unsuitable for parole, and then must review the record in order to determine whether the

18  state court decision holding that these findings were supported by "some evidence"

19  constituted an unreasonable application of the "some evidence" principle articulated in

20  *Hill.  Id.; see id.* at 852-53 (finding state court did not unreasonably apply "some

21  evidence" standard to uphold parole suitability denial where there was some evidence at

22  the time of the hearing to support a finding that the prisoner would present a danger to

23  society based on the nature of the commitment offense under the applicable parole

24  regulations).

25          The evidence before the BPT indicated that Petitioner continued to pose an

26  unreasonable risk of danger to society.  To begin with, Petitioner's participation in this

27

28

9

cold-blooded killing was preceded by a lengthy criminal history.  The killing was especially cruel in that the victim was repeatedly stabbed with scissors when his eyes remained open after he was shot at close range in the neck.  In addition, the motive for the offense, theft, was certainly trivial compared to the gravity of the offense.  Moreover, Petitioner had an unstable social history, as he had dropped out of high school, had a substantial history of drug abuse and lack of work history prior to going to prison.  The Board considered the lengthy list of his prior convictions, including a prior manslaughter. The psychiatric evaluation found that Petitioner presented a moderate risk to society and that Petitioner needed participation in substance abuse prevention, notwithstanding Petitioner's belief that he did not.  Most importantly, the BPT considered Petitioner's participation in drug trafficking in prison as recently as 1998, six years before the hearing after 24 years of incarceration.  Petitioner's opinion that he did not need substance abuse prevention after such a recent involvement in drug trafficking reflects a lack of insight.  Such evidence amounts to "some evidence" in support of the BPT's determination that Petitioner continued to present a risk of danger if released to the public, and consequently that Petitioner was not suitable for parole.

The Ninth Circuit has noted that "over time" the BPT's "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment" would "raise serious questions involving his liberty interest in parole." *Biggs*, 334 F.3d at 916.  However, in this case the BPT's denial of parole was not only based upon Petitioner's commitment offense and prior criminal history.  Here, there were numerous and substantial other reasons, described above, for their denial of parole as well.

Based upon the record in this case, the state courts' determination that there was some reliable evidence to support the BPT's decision, and that Petitioner's right to due process was not violated, was not contrary to or an unreasonable application of federal

10

law. *See, e.g., Rosas*, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); *Biggs*, 334 F.3d at 916 (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); *Morales*, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment).  Accordingly, habeas relief is not warranted on this claim.

### 4.      "Anti-Parole" Policy

Petitioner further argues that the BPT possesses an "Anti-Parole Policy" that is biased and violates his constitutional rights.  There is no evidence in the record indicating that this alleged policy affected the BPT's decision or served as the basis for denying Petitioner parole.  To the contrary, the transcript from Petitioner's 2004 parole hearing demonstrates that he received an individualized assessment of his potential parole suitability.  Petitioner's reliance on the low number of parole grants for life inmates serving sentences for first degree murder provides no proof of the BPT's alleged bias against parole.  *Cf. California Dept. of Corrections v. Morales*, 514 U.S. 499, 510-11 (1995) (citing that 90 percent of all California inmates are found unsuitable for parole as evidence that deferring annual parole suitability hearings was lawful and reasonable).  Consequently, Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: January 26, 2009

_____
JEFFREY S. WHITE
United States District Judge

11

1

UNITED STATES DISTRICT COURT

2

FOR THE

3

NORTHERN DISTRICT OF CALIFORNIA

4

5

6     PETERSON,                                    Case Number: CV05-04458 JSW

7                 Plaintiff,              **CERTIFICATE OF SERVICE**

8       v.

9     CAREY et al,

10                Defendant.                        /

11

12    I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
      Court, Northern District of California.

13    That on January 26, 2009, I SERVED a true and correct copy(ies) of the attached, by placing
      said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by
14    depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
      delivery receptacle located in the Clerk's office.

15

16

17    Wilbert Peterson B-22677
      CSP-Solano
18    P.O. Box 4000
      Vacaville, CA 95696

19    Dated: January 26, 2009                   *Jennifer Ottolini*

20                                              Richard W. Wieking, Clerk
                                                By: Jennifer Ottolini, Deputy Clerk
21

22

23

24

25

26

27

28